

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:15cr 093 |
| | ) | |
| | ) | 18 U.S.C. § 371 |
| v. | ) | Conspiracy |
| | ) | (Count 1) |
| | ) | |
| JERMAINE BROWN, | ) | 18 U.S.C. § 201(b)(2)(C) |
| | ) | Bribery of a Public Official |
| Defendant. | ) | (Counts 2-6) |
| | ) | |
| | ) | Forfeiture Notice |

## INDICTMENT

MAY 2015 TERM—At Richmond, Virginia

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times relevant to this indictment:

1. From 2005 through 2015, Defendant JERMAINE BROWN ("BROWN") was employed by the United States Bureau of Prisons (a component of the United States Department of Justice) as a correctional officer and recreational specialist at the Federal Correctional Complex (FCC) in Petersburg, Virginia. During the time relevant to this indictment, he was assigned to the Recreation Department in the Federal Correctional Institution—Medium (FCI Petersburg—Medium). BROWN's duties as recreational specialist included, among other things, instructing and supervising inmates in recreational activities and enforcing Bureau of Prison policies, procedures, regulations, and federal law.

1

2.      Inmates A, B, C, D, E, and F were all inmates incarcerated at FCI Petersburg—Medium during most times relevant to the indictment.

3.      The United States Department of Justice's Office of the Inspector General (DOJ-OIG) was responsible, along with other Department of Justice agencies, for investigating allegations of criminal wrongdoing and administrative misconduct on the part of Department of Justice employees, including BROWN. In connection with these investigations, DOJ-OIG had the authority to serve administrative subpoenas issued by DOJ-OIG itself or federal grand juries, to execute search warrants, and to affect arrests.

## COUNT ONE
(Conspiracy)

1.      Paragraphs One through Three of the "General Allegations" in this indictment are incorporated by reference as if fully set forth here.

2.      From in or around Fall 2010, through in or around March 25, 2013, the exact dates being unknown to the grand jury, in the Eastern District of Virginia within the jurisdiction of the Court, and elsewhere, defendant JERMAINE BROWN did unlawfully, knowingly, and intentionally, combine, conspire, confederate and agree with Inmates A, B, C, D, E, and F, as well with others, both known and unknown to the grand jury, to commit the following offenses against the United States:

   a.      to knowingly and willfully provide inmates of a federal prison, that is, FCC Petersburg, prohibited objects as defined in Title 18, United States Code, Section 1791(d)(1)(A), (B), and (G), in violation of Title 18, United States Code, Section 1791(a)(1);

   b.      being a public official, to directly, indirectly, and corruptly demand, seek, receive, and accept, and agree to receive and accept anything of value in return for being influenced in

2

the performance of any official act, in violation of Title 18, United States Code, Section 201(b)(2)(A); and

    c.    being a public official, to directly, indirectly, and corruptly demand, seek, receive, and accept, and agree to receive and accept anything of value in return for being induced to do or omit to do any act in violation of official duties in violation of Title 18, United States Code, Section 201(b)(2)(C).

## OBJECTS OF THE CONSPIRACY

It was an object of the conspiracy for BROWN to enter into an agreement to and provide inmates contraband cigarettes and controlled substances in FCC Petersburg.

It was an object of the conspiracy for BROWN to enrich himself by using and agreeing to be influenced to perform official acts, and by being induced to do or refrain from doing acts, in violation of the duties of his official position, in exchange for a stream of things of value, to include cash, which flowed to and for the benefit of BROWN from FCC Petersburg inmates.

## WAYS, MANNERS, AND MEANS OF THE CONSPIRACY

The conspiracy was carried out through the following ways, manner, and means, among others:

    a.    BROWN entered into an agreement with inmates to provide contraband cigarettes and controlled substances inside FCC Petersburg for later distribution amongst the prison population.

    b.    BROWN solicited and accepted cash in exchange for providing contraband cigarettes and controlled substances in violation of his official position.

c. In order to conceal the nature of his conduct, BROWN instructed inmates to pay him in either cash or Western Union monetary wire transfers sent by inmate's friends and families in exchange for providing contraband cigarettes and controlled substances at FCC Petersburg in violation of his official position.

d. In order to conceal the nature of his conduct, BROWN entered into an agreement with a known co-conspirator to pick up and deliver to him Western Union monetary wire transfers sent by inmate's friends and families as payment for contraband cigarettes.

e. In order to gain the trust and confidence of inmates, BROWN told several inmates that he was a member of the Bloods street gang.

## OVERT ACTS

In furtherance of the conspiracy and to affect its objects, the defendant and the other co-conspirators committed at least one of the following acts in the Eastern District of Virginia and elsewhere:

1. In and around Fall 2010, at FCC Petersburg, BROWN entered into an agreement with Inmate A to provide contraband cigarettes for resale to other inmates in exchange for money. Also as part of the agreement, in exchange for Inmate A's help in selling cigarettes in FCC Petersburg on BROWN's behalf, BROWN agreed to sign Inmate A to a music recording contract with DaBlokMusik, Group, LLC, a record company co-owned by BROWN.

2. Beginning in and around Fall 2010 and continuing to in and around April 2011, BROWN provided Inmate A with contraband cigarettes on multiple occasions within FCC Petersburg for later resale to other inmates in exchange for money.

3. Beginning in and around Fall 2010 and continuing to at least March 2013, BROWN instructed inmates to pay him cash or direct friends or family to send Western Union

monetary wire transfers to a known co-conspirator as payment for BROWN providing contraband cigarettes and controlled substances in FCC Petersburg.

4. Beginning in at least December 2010 and continuing to at least March 2011, BROWN instructed a known co-conspirator to pick up and deliver to him Western Union monetary wire transfers sent by friends and family members of Inmates A, B, and C as payment for BROWN providing them contraband cigarettes in FCC Petersburg.

5. On or about December 8, 2010, a known co-conspirator picked up a Western Union wire transfer of $200 sent by or on behalf of Inmate B and delivered the money to BROWN as payment for providing contraband cigarettes at FCC Petersburg.

6. On or about February 10, 2011, a known co-conspirator picked up a Western Union wire transfer of $1000 sent by or on behalf of Inmate C and delivered the money to BROWN as payment for providing contraband cigarettes at FCC Petersburg.

7. On or about February 10, 2011, a known co-conspirator picked up a Western Union wire transfer of $450 sent by or on behalf of Inmate B and delivered the money to BROWN as payment for providing contraband cigarettes at FCC Petersburg.

8. On or about February 19, 2011, BROWN emailed a known co-conspirator to pick up a Western Union wire transfer sent on behalf of Inmate B as payment for contraband cigarettes provided by BROWN in FCC Petersburg.

9. On or about February 20, 2011, a known co-conspirator picked up a Western Union wire transfer of $400 sent by or on behalf of Inmate B and delivered the money to BROWN as payment for providing contraband cigarettes at FCC Petersburg.

10. On or about February 26, 2011, a known co-conspirator picked up a Western Union wire transfer of $500 sent by or on behalf of Inmate A and delivered the money to

BROWN as payment for providing contraband cigarettes at FCC Petersburg.

11. On or about March 6, 2011, a known co-conspirator picked up a Western Union wire transfer of $500 sent by or on behalf of Inmate B and delivered the money to BROWN as payment for providing contraband cigarettes at FCC Petersburg.

12. Shortly after Inmate A's release from FCC Petersburg in April 2011, pursuant to their earlier agreement BROWN sent Inmate A a document entitled "DaBlokMusik Group Recording Contract." Within this document BROWN offered Inmate A a recording contract with DaBlokMusik Group, LLC, in exchange for his assistance in distributing cigarettes on BROWN's behalf at FCC Petersburg.

13. Beginning in Summer 2011, and continuing to at least March 2013, BROWN provided Inmate D with contraband cigarettes, a detectable amount of heroin, and a detectable amount of marijuana on multiple occasions in FCC Petersburg.

14. Beginning in Spring 2011, and continuing to the Summer of 2012, BROWN provided Inmate E with contraband cigarettes and a detectable amount of heroin on multiple occasions in FCC Petersburg.

15. In and around 2011, Inmate F provided a service of value to BROWN by painting his motorcycle helmet within FCC Petersburg and in exchange received contraband cigarettes from BROWN.

16. On or about March 25, 2013, upon his release from FCC Petersburg, Inmate D met with BROWN in Petersburg, Virginia, and paid him in cash for debts owed stemming from marijuana provided by BROWN to Inmate D in FCC Petersburg.

(In violation of Title 18, United States Code, Section 371.)

## COUNT TWO
(Bribery of a Public Official)

On or about December 8, 2010, in the Eastern District of Virginia and within the jurisdiction of this Court, defendant JERMAINE BROWN, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, and for any other person or entity, in return for being induced to do an act and omit to do an act in violation of his official duty; that is, defendant JERMAINE BROWN accepted $200 from, and paid on behalf of, a prison inmate at FCC Petersburg in exchange for providing that inmate or others with items banned in the prison, including cigarettes, in violation of his official duty as an employee at the prison.
(In violation of Title 18, United States Code, Section 201(b)(2)(C))

## COUNT THREE
(Bribery of a Public Official)

On or about February 10, 2011, in the Eastern District of Virginia and within the jurisdiction of this Court, defendant JERMAINE BROWN, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally and for any other person or entity, in return for being induced to do an act and omit to do an act in violation of his official duty; that is, defendant JERMAINE BROWN accepted $1450 from, and paid on behalf of, a prison inmate at FCC Petersburg in exchange for providing that inmate or others with items banned in the prison, including cigarettes, in violation of his official duty as an employee at the prison.
(In violation of Title 18, United States Code, Section 201(b)(2)(C))

## COUNT FOUR
(Bribery of a Public Official)

On or about February 20, 2011, in the Eastern District of Virginia and within the jurisdiction of this Court, defendant JERMAINE BROWN, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally and for any other person or entity, in return for being induced to do an act and omit to do an act in violation of his official duty; that is, defendant JERMAINE BROWN accepted $400 from, and paid on behalf of, a prison inmate at FCC Petersburg in exchange for providing that inmate or others with items banned in the prison, including cigarettes, in violation of his official duty as an employee at the prison.

(In violation of Title 18, United States Code, Section 201(b)(2)(C))

## COUNT FIVE
(Bribery of a Public Official)

On or about February 26, 2011, in the Eastern District of Virginia and within the jurisdiction of this Court, defendant JERMAINE BROWN, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally and for any other person or entity, in return for being induced to do an act and omit to do an act in violation of his official duty; that is, defendant JERMAINE BROWN accepted $500 from, and paid on behalf of, a prison inmate at FCC Petersburg in exchange for providing that inmate or others with items banned in the prison, including cigarettes, in violation of his official duty as an employee at the prison.

(In violation of Title 18, United States Code, Section 201(b)(2)(C))

## COUNT SIX
(Bribery of a Public Official)

On or about March 6, 2011, in the Eastern District of Virginia and within the jurisdiction of this Court, defendant JERMAINE BROWN, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally and for any other person or entity, in return for being induced to do an act and omit to do an act in violation of his official duty; that is, defendant JERMAINE BROWN accepted $500 from, and paid on behalf of, a prison inmate at FCC Petersburg in exchange for providing that inmate or others with items banned in the prison, including cigarettes, in violation of his official duty as an employee at the prison.

(In violation of Title 18, United States Code, Section 201(b)(2)(C))

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2 Fed. R. Crim. P., the defendant is hereby notified that upon conviction of any of offenses alleged in Counts One through Six of this Indictment, the defendant shall forfeit any property, real or personal, which constitutes or is derived from any proceeds traceable to the violation, or a conspiracy to commit such offense.

If the property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461).

A TRUE BILL:

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

_____
FOREPERSON

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____
Erik S. Siebert
Assistant United States Attorney